UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 26-107 |
| OLIN D. GRANT, JR. | SECTION "N" |

# ORDER AND REASONS

Before the Court is Defendant Olin D. Grant, Jr.'s Motion to Dismiss Indictment.[1] The Government filed a response in opposition,[2] and Grant submitted a reply.[3] The Court held a hearing at which both parties presented argument. After careful consideration of the parties' memoranda, evidence and argument presented at the hearing, the record, and the applicable law, the Motion to Dismiss Indictment is denied.

## I. Background

A grand jury charged Olin Grant as a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[4] Count 1 alleged that Grant, knowing he had been previously convicted of crimes punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm that had been in and affecting interstate commerce.[5] The predicate convictions for Count 1 are possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C.

[1] Rec. Doc. 26.
[2] Rec. Doc. 30.
[3] Rec. Doc. 31.
[4] Rec. Doc. 1 at 1.
[5] *Id.* at 1-2.

§ 924(c)(1)(A)(i), on November 20, 2019, and possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) on the same date.

Grant moved to dismiss the indictment.[6] He argues principally that § 922(g)(1) violates the constitutionally mandated separation of powers. He further contends that the statute is unconstitutional under the Second Amendment both facially and as applied, exceeds Congress's authority under the Commerce Clause, and is unconstitutionally vague.[7] Grant acknowledges that each ground for his motion other than his separation-of-powers argument is foreclosed by binding precedent, and preserves the arguments for further review.

## II. Legal Standard

Rule 12(b)(1) of the Federal Rules of Criminal Procedure allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[8] "The propriety of granting a motion to dismiss an indictment ... is by and large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determination of fact."[9] "If a question of law is involved, then consideration of the motion is generally proper."[10] Motions to dismiss that question the constitutionality of a statute are such questions of law that are proper for the court to review at this stage.[11]

---

[6] Rec. Doc. 26.
[7] Rec. Doc. 26-1 at 1-2.
[8] Fed. R. Crim. Proc. 12(b)(1).
[9] *United States. v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (citation modified).
[10] *Id.* (citation modified).
[11] *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

## III. Analysis

Section 922(g)(1) has been the subject of a massive wave of litigation following the Supreme Court's holding in *New York State Rifle & Pistol Association v. Bruen* that the government must justify any firearm regulation by demonstrating that it aligns with the nation's historical tradition.[12] Grant's motion is part of that wave. In it, he argues that § 922(g)(1) is unconstitutional under the principles of separation of powers.[13]

The Supreme Court reaffirmed in *Bruen* that the constitutional right of law-abiding, responsible citizens to bear arms for self-defense is not a "second-class right."[14] The Court established a framework for courts confronting constitutional challenges to firearm regulation.[15] When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify a regulation, the government must demonstrate that the regulation is consistent with our nation's historical tradition of firearm regulation. Applying this framework to § 922(g)(1), the Fifth Circuit rejected a categorical determination of constitutionality and instead held that the statute is constitutional only as applied to those felons whose particular predicate offenses have a historical analogue supporting disarmament.[16] In the present motion, Grant relies on *United States v.*

---

[12] *See generally United States v. Luna*, No. 25-40272, 2026 WL 2507689 (5th Cir. Aug. 25, 2026); *United States v. Landrum*, 168 F.4th 771 (5th Cir. 2026).
[13] Rec. Doc. 26-1 at 4, 7; *see United States v. Celestine*, No. 25-30506, 2026 WL 1349581, at *1 (5th Cir. May 14, 2026) (acknowledging that Fifth Circuit "ha[s] not previously addressed" whether "case-by-case application of § 922(g)(1) in the Second Amendment context violates separation of powers principles").
[14] 597 U.S. 1, 70 (2022).
[15] *Id.* at 17.
[16] *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024).

*Reese*,[17] a Supreme Court case from 1875 involving a law enacted pursuant to the Fifteenth Amendment, to argue that the judiciary is prohibited from saving a broadly written penal statute (here, § 922(g)(1)) by judicially narrowing it to cover only constitutional conduct.[18] Essentially, he argues that case-by-case determination of the constitutionality of § 922(g)(1) as applied to an individual felon is an unconstitutional exercise of legislative power by the judiciary. Grant fails to distinguish, however, between declining to enforce a statute against a specific defendant where the Constitution forbids it and judicially altering the text of the law itself. Even accepting Grant's premise that *Reese* applies, his argument misconstrues the appropriate course when courts face unconstitutional applications of a statute.

### A. Declining to apply a statute as unconstitutional in a particular case does not amend the law but constitutes a core judicial function.

Grant relies heavily on *Reese* to support his motion to dismiss. In *Reese* two inspectors of a municipal election were indicted for refusing to receive and count the vote of an African American who met the voting qualifications. Congress had passed the statute at issue under the grant of legislative power in the Fifteenth Amendment to enforce the prohibition on denying voting rights based on race, color, or previous servitude. Because the statute punished the denial of voting rights generally, and not solely on account of one's race, color, or previous servitude, the Supreme Court held that Congress had attempted to criminalize acts beyond the scope of its constitutional authority. The Court found that the statute could not be limited by judicial

---

[17] 92 U.S. 214 (1875).
[18] Rec. Doc. 26-1 at 3.

construction to make it operate only within Congress's authority without "mak[ing] a new law," rather than "enforce[ing] an old one."[19] To that point, the Court admonished, courts cannot "introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only."[20]

Grant argues *Reese* is analogous to § 922(g)(1) because the statute uses "general language"[21] to prohibit firearm possession by "any person … who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."[22] Grant contends that because the Fifth Circuit has recognized in previous decisions that this statute covers conduct that Congress cannot constitutionally prohibit under the Second Amendment, the statute casts an unconstitutionally wide net.[23] Accordingly, he argues, any attempt by this Court to parse the statute's constitutional applications from its unconstitutional ones constitutes an unlawful rewriting of the statute and an unconstitutional delegation of legislative power to the judiciary.[24] Grant acknowledges the general rule is "when confronting a constitutional flaw in the statute, [courts] try to limit the solution to the problem," and that "partial, rather than facial, invalidation is the required course."[25] But

---

[19] *Reese*, 92 U.S. at 221 (citation modified).
[20] *Id.*
[21] Rec. Doc. 26-1 at 3.
[22] 18 U.S.C. § 922(g)(1).
[23] *See United States v. Hembree*, 165 F.4th 909, 918 (5th Cir. 2026) (holding § 922(g)(1) unconstitutional as applied to predicate felony for simple possession); *United States v. Mitchell*, 160 F.4th 169, 194 (5th Cir. 2025) (holding that § 922(g) is unconstitutional as applied to predicate felonies that involved "present" intoxication with marijuana but not as applied to those that involved "habitual" intoxication); *United States v. Doucet*, No. 24-30656, 2025 WL 3515404, at *5 (5th Cir. Dec. 8, 2025) (holding that § 922(g)(1) is unconstitutional as applied to predicate felony for marijuana cultivation).
[24] Rec. Doc. 26-1 at 4.
[25] *Id.* at 7-8.

partial invalidation, he argues, is unavailable where the legislature has enacted an inseverable statute, and is permissible only where "what is left is fully operative as a law."[26] Section 922(g)(1), he observes, does not have a severability clause and is a single sentence. In his view, no limiting construction can be applied that would cure the constitutional problem while leaving an operative prohibition against a felon owning a firearm.

**1. The as-applied approach to § 922(g)(1) is consistent with separation-of-powers principles.**

The Constitution divides the powers delegated to the three branches of government into distinct categories of legislative, executive, and judicial powers "to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility."[27] When any branch acts, it is presumed to be exercising the power the Constitution delegates to it.[28] Given this structure, a "strong presump[tion] [of] validity … attaches to an Act of Congress,"[29] which represents the democratic will of the people. To maintain the constitutionally prescribed balance of power, the judiciary is charged with enforcing the "legislative will when ascertained, if within the constitutional grant of power."[30] When Congress steps "outside of its constitutional limitations, … the courts are authorized to, and when called upon in due course of legal proceedings, must, annul its encroachments upon the reserved

[26] *Id.* at 8-9.
[27] *INS v. Chadha*, 462 U.S. 919, 951 (1983).
[28] *Id.*
[29] *Skilling v. United States*, 561 U.S. 358, 403 (2010) (citation modified); *see also Chadha*, 462 U.S. at 944 (courts "begin, of course, with the presumption that the challenged statute is valid").
[30] *United States v. Reese*, 92 U.S. 214, 221 (1875).

power of the States and the people."[31] Courts, however, must "not nullify more of a legislature's work than is necessary" because "a ruling of unconstitutionality frustrates the intent of the elected representatives of the people."[32]

Under our system of judicial review, a court may uphold a statute as constitutional, while simultaneously finding its application unconstitutional as to a particular defendant in a particular case or controversy.[33] "It is axiomatic that a 'statute may be invalid as applied to one state of facts and yet valid as applied to another.'"[34] The "normal rule" is that 'partial, rather than facial, invalidation is the required course,' such that a 'statute may ... be declared invalid to the extent that it reaches too far, but otherwise left intact.'"[35] Typically, courts are more easily able to avoid invading the legislative reign where the background constitutional rules have been established and the court can articulate a narrow remedy so as to preserve the will of the people's democratically elected officials.[36]

Grant's argument conflates two distinct types of judicial acts: (1) judicially amending a statute to mean something narrower than the text provides, and (2) holding that the Constitution forecloses application of a statute in a particular case.

---

[31] *Id.*
[32] *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) (citation modified).
[33] *Id.* (When confronted with a constitutional flaw in a statute, courts can enjoin the unconstitutional application or "sever…[the] problematic portions.") (citation modified); *see also* Jonathan L. Mitchell, *The Writ of Erasure Fallacy*, 104 Va. L. Rev. 933, 935-36 (2018) (power of judicial review "permits a court to decline to enforce a statute in a particular case or controversy," not to "strike down" a duly enacted statute).
[34] *Ayotte*, 546 U.S. at 329 (quoting *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 289 (1921)).
[35] *Id.*; *see also Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502-03 (1985) (discussing cases in which the Supreme Court found statutes invalid only as applied to certain conduct at issue).
[36] *Ayotte*, 546 U.S. at 329-30; *see also HCI Distribution, Inc. v. Peterson*, 110 F.4th 1062, 1070-71 (8th Cir. 2024) (applying *Ayotte*).

*Reese* forbids the former. This Court's ruling today invokes only the latter. The Fifth Circuit has found § 922(g)(1) constitutionally inapplicable where there is no historical analogue for disarming those convicted of certain predicate offenses. In these cases the defendant's conviction under § 922(g)(1) violates the Second Amendment as applied to him.[37]

When a court determines that a statute and the Constitution both apply to a case and the two conflict, it decides which rule governs that case.[38] This is of the very essence of judicial duty.[39] No text of the statute is modified; no meaning is changed; and no operation is changed. What changes is whether judgment can be entered against the defendant before the court.

This is evident from the elements of § 922(g)(1). To obtain a conviction under § 922(g)(1), the government must prove four things beyond a reasonable doubt: the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; he knew of that conviction; he knowingly possessed a firearm; and that firearm had been in or had affected interstate commerce.[40]

The constitutional inquiry is a different task. When a defendant contends that the Second Amendment bars his prosecution, the court asks whether the Amendment's "plain text" covers his conduct and if so, whether the government has

---

[37] *See, e.g.*, *Hembree*, 165 F.4th 909.
[38] *Marbury*, 5 U.S. 137, 177; *id.* at 178 ("If, then, the courts are to regard the constitution, and the constitution is superior to any ordinary act of the legislature, the constitution, and not such ordinary act, must govern the case to which they both apply.").
[39] *Id.* at 178.
[40] *United States v. Ducksworth*, 168 F.4th 764, 770 (5th Cir. 2026) (citing *United States v. Johnson*, 990 F.3d 392, 400 (5th Cir. 2021)).

shown that the regulation "is consistent with the Nation's historical tradition of firearm regulation."[41] At that second step, courts examine the nature of the defendant's underlying offense and its relationship to our nation's historical practice of regulation.[42] This inquiry asks a constitutional question, not a statutory one. It asks whether the Constitution permits enforcement against this particular defendant.[43] If the Court determines that the statute is consistent "with the Nation's historical tradition of firearm regulation,"[44] the constitutional challenge fails and the statute may be applied to the defendant.

The authorities that Grant cites do not support his argument. *United States v. Davis* involved a statute that provided for prison sentences for using a firearm in connection with certain other federal crimes; however, the statute did not define the federal crimes that were included.[45] The statute had a residual clause that made an element of the offense turn on whether the predicate offense "by its nature, involves a substantial risk that physical force … may be used."[46] The indeterminacy resided in the statute itself, in a phrase the factfinder was required to determine.[47] That feature gave rise to the Supreme Court's separation-of-powers and vagueness concerns: where a statutory element supplies no ascertainable standard, judicial

---

[41] *Bruen*, 597 U.S. at 24.
[42] *Diaz*, 116 F.4th at 468; *United States v. Williams*, 113 F.4th 637, 648 (6th Cir. 2024) ("Specifically, courts must study how and why the founding generation regulated firearm possession and determine whether the application of a modern regulation 'fits neatly within' those principles.").
[43] *Diaz*, 116 F.4th at 472 ("The government has met its burden to show that applying 18 U.S.C. § 922(g)(1) to Diaz is consistent with this Nation's historical tradition of firearm regulation.").
[44] *Id.*
[45] 588 U.S. 445, 448 (2019).
[46] 18 U.S.C. 924(c)(3)(B).
[47] *Davis*, 588 U.S. at 448 ("the language provides no reliable way to determine which offenses qualify as crimes of violence").

construction of the element operates as a definition of the offense and the legislature has in effect "hand[ed] off [its] responsibility for defining criminal behavior to unelected … judges."[48] Of particular concern to the Court was that a case-specific reading of the statute would serve to *expand* the reach of the criminal statute to apply criminal penalties to conduct the statute was not previously understood to reach.[49]

Section 922(g)(1) does not leave indeterminacy for the fact finder. Rather the question is a simple one: whether the defendant was a felon who knowingly possessed a firearm.[50] Only then does the Court separately consider whether disarming that particular defendant runs afoul of the Constitution. This is clear from the Fifth Circuit authority Grant invokes. Rather than construe § 922(g)(1), each case turned on whether the government carried its burden at *Bruen's* second step, and each held that it had not.[51] This was a determination about the sufficiency of a litigant's historical showing, not a construction of the statute.

In *Hembree*, for example, the government offered Founding-era punishments for stolen horses, mail theft, and counterfeiting as analogues for disarming a defendant convicted for possession of methamphetamine. The Court found these inapposite because theft and fraud were not sufficiently similar to intoxicating

---

[48] *Id.* (citation modified).
[49] *Id.* at 463-64.
[50] *United States v. Broadnax*, 601 F.3d 336, 341 (5th Cir. 2010).
[51] *Hembree*, 165 F.4th at 916 ("Taking each analogue in turn, we find that the government did not carry its burden."); *United States v. Cockerham*, 162 F.4th 500, 504 (5th Cir. 2025) ("Cockerham's § 922(g)(1) conviction therefore violates the Second Amendment."); *Mitchell*, 160 F.4th at 194 ("Because we do not have sufficient evidence that confirms Mitchell was intoxicated while possessing a firearm as to his § 922(g)(1) … conduct, we hold that our Nation's historical intoxication laws do not impose a comparable burden on him and therefore fail under *Bruen*."); *Doucet*, 2025 WL 3515404, at *6 ("Neither analogue satisfies the Government's burden under *Bruen*.").

substances, and the government's remaining authorities addressed trafficking rather than possession.[52] *Doucet* rejected the same analogues as insufficiently similar to attempted marijuana cultivation.[53] And *Mitchell* declined the government's invitation to treat dangerousness as controlling, looking to Founding-era regulation of alcohol.[54] In none of these cases did the analysis turn on statutory language but rather on whether the government had shown the Constitution permits enforcement of the statute as applied to the particular defendant.

**2. There is no severability bar to an as-applied approach.**

Grant argues that, although the default, partial invalidation is inappropriate when "the legislature had passed an inseverable Act."[55] Section 922(g)(1), he claims, is inseverable because it does not contain a severability clause and § 922(g)(1) cannot be partially invalidated. But Grant does not contend with the Supreme Court's severability jurisprudence.[56] In *Ayotte* the Court addressed a New Hampshire statute that required parental notification for a minor to obtain an abortion. The statute did not, however, "explicitly permit a physician to perform an abortion in a medical emergency without parental notification."[57] The lower courts invalidated the statute in its entirety due to the absence of a safety-of-the-mother exception, in keeping with Supreme Court precedent.[58] The Supreme Court held this was error.[59] Concluding

[52] *Hembree*, 165 F.4th at 914, 916-17.
[53] 2025 WL 3515404, at *6.
[54] 160 F.4th at 194.
[55] Rec. Doc. 26-1 at 8 (citing *Brockett*, 472 U.S. at 506).
[56] *See, e.g.*, *Seila Law LLC v. Consumer Fin'l Protection Bureau*, 591 U.S. 197, 234-35 (2020); *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010).
[57] *Ayotte*, 546 U.S. 324. Violations of the Act were subject to criminal and civil penalties.
[58] *Id.* at 325.
[59] *Id.* at 326.

that only a few applications of New Hampshire's statute presented a constitutional problem, the Court held that the courts "need not have invalidated the law wholesale."[60] Section 922(g)(1) likewise need not be invalidated wholesale.

Grant's argument fails for another reason. Generally, in crafting a remedy, a court asks whether the legislature would have preferred for the statute to apply without the unconstitutional component or to not exist at all.[61] Grant argues that Congress enacted § 922(g)(1) under an understanding of the Second Amendment that later court decisions replaced and would not desire a narrowed statute.[62] But the proper question is whether Congress would prefer the statute enforced to its constitutional limit or not enforced at all.[63] Grant's own authorities supply the answer. Even without a severability clause, there is nothing in the statute's text or historical context [making] it evident that Congress would have preferred" no statute at all.[64] The Supreme Court has observed that with § 922(g)(1) Congress "sought to rule broadly," through an "expansive legislative approach" designed as "sweeping prophylaxis" against firearm misuse.[65] This authority demonstrates congressional intent in favor of the statute's enforcement.

---

[60] *Id.* at 331.
[61] *Ayotte*, 546 U.S. at 329-30; *see also HCI Distribution, Inc.*, 110 F.4th at 1070-71 (applying *Ayotte*).
[62] Rec. Doc. 26-1 at 5.
[63] *Seila Law*, 591 U.S. at 236; *see also Ayotte*, 546 U.S. at 330 ("After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?").
[64] *Free Enter. Fund*, 561 U.S. at 509; *see Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 630 (2020) (even in absence of severability clause, court applies "the presumption of severability").
[65] Rec. Doc. 26-1 at 6 (citing to *Scarborough v. United States*, 431 U.S. 563, 572 (1977); *Lewis v. United States*, 445 U.S. 55, 61, 63 (1980)).

Although Grant invokes the separation of powers to argue that courts must not intrude upon the legislature, the remedy he seeks is more intrusive.[66] Declining to enforce a statute in particular cases where the Constitution forbids its application leaves the statute intact and operative in other cases. Holding the statute wholly unenforceable, in contrast, comes nearer to "substitu[ing] the judicial for the legislative department of the government."[67] "[B]y preserving a statute through a limiting interpretation," a court does "not legislate, but instead respects the legislature."[68]

**B. Defendant's argument would broadly foreclose as-applied applications of a statute and is more akin to a facial challenge.**

Grant argues § 922(g)(1) cannot be enforced against *any* defendant. "The label is not what matters";[69] a claim is a facial one where the claim and the relief that would follow "reach beyond the particular circumstances of these plaintiffs."[70] Though styled as an as-applied objection, Grant's reliance on *Reese* functionally demands the facial invalidation of § 922(g)(1).[71] If his challenge were successful, it would undermine the as-applied approach that is fundamental to judicial review.

---

[66] *See United States v. Raines*, 362 U.S. 17, 28 (1960) (Frankfurter, J. concurring) ("To deal with legislation so as to find unconstitutionality is to reverse the duty of courts to apply a statute so as to save it.").
[67] *Reese*, 92 U.S. at 221 (citation modified).
[68] *Skilling*, 561 U.S. at 409 n.43 (citation modified).
[69] *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).
[70] *Id.*
[71] *Id.* ("The claim is "facial" in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (The distinction between facial constitutional challenges and as-applied constitutional challenges goes to "the breadth of the remedy employed by the court, not what must be pleaded in a complaint."); *Barilla v. City of Houston, Texas*, 13 F.4th 427, 434 n.4 (5th Cir. 2021) ("Facial challenges 'entail ...a departure from the norms of adjudication in federal courts....[T]o allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand.") (citing *Sabri v. United States*, 541 U.S. 600, 609–10 (2004)).

Grant argues § 922(g)(1) is written in general terms[72]; the Second Amendment renders some applications invalid[73]; separating the valid from the invalid requires the judiciary to supply criteria Congress did not create[74]; supplying such criteria is a legislative act[75]; and this resulting defect cannot be severed.[76] Each of these arguments is true of the defendant in *Diaz* as it is with Grant. Because Grant's claim reaches beyond his particular case—it is not merely an as-applied challenge.

Second, in as-applied challenges, the analysis depends on facts particular to the defendant. Grant's *Reese* argument asks the Court to dismiss the indictment without regard to his conviction or any fact specific to him.[77] Contrast that with his separately pleaded as-applied challenge, in which he devotes several pages to his predicate convictions.[78] The consequence is that to prevail, Grant must establish that no "set of circumstances exists under which the statute would be valid."[79] "This is a heavy burden" that he cannot meet.[80] The Fifth Circuit held in *Diaz* that § 922(g)(1) is facially constitutional and this logically entails that the statute has constitutionally permissible applications.[81]

---

[72] Rec. Doc. 26-1 at 3.
[73] *Id.* at 4.
[74] *See id.*
[75] *Id.*
[76] *Id.* at 7.
[77] *See generally id.*
[78] *See id.* at 11-13.
[79] *United States v. Salerno*, 481 U.S. 739, 745 (1987).
[80] *Id.*
[81] *Diaz*, 116 F.4th at 472 ("it is constitutional as applied and facially as well."); *see Kanter v. Barr*, 919 F.3d 437, 442 (7th Cir. 2019), (abrogated in part by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* but for different reasons) ("every federal court of appeals to address the issue has held that § 922(g)(1) does not violate the Second Amendment on its face.") (collecting cases); *see also United States v. Hemani*, 146 S. Ct. 1677, 1700 (2026) (Alito & Kagan, J.J. concurring) ("I also agree that nothing in the opinion of the Court should be read to cast doubt on the constitutionality of other provisions of § 922(g), such as §§ 922(g)(1)"); *Rahimi*, 602 U.S. at 699 ("prohibitions, like those on the

**C. Grant's remaining arguments are foreclosed by precedent.**

Grant raises three additional arguments that he concedes are foreclosed by binding precedent: (1) § 922(g)(1) violates the Second Amendment, both facially and as applied; (2) the statute exceeds Congress's authority under the Commerce Clause; and (3) the statute is unconstitutionally vague. Because Grant acknowledges that existing precedent bars these claims—raising them solely to preserve the record for appeal—the Court rejects them.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Olin D. Grant, Jr.'s Motion to Dismiss Indictment[82] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 13th day of October, 2026.

*Anna St John*

ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'") (citing *District of Columbia v. Heller*, 554 U.S. at 626, 627, n.26 (2008)).

[82] Rec. Doc. 26.